UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARINTON GONZALEZ GAITAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  Civil No. 25-13104-LTS |
| | ) |
| PATRICIA HYDE et al., | ) |
| | ) |
| Respondents. | ) |

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

November 14, 2025

SOROKIN, J.

Harinton Gonzalez Gaitan, along with seven other noncitizens in immigration detention,

filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2241.  Doc. No. 1.  The claims

of six of Gonzalez Gaitan's co-petitioners were resolved in an earlier Order requiring release or a

bond hearing in immigration court for each of those individuals.  Doc. No. 10.  The seventh co-

petitioner voluntarily dismissed his claims thereafter.  Doc. No. 11.  This Order resolves all that

remains of this case—Gonzalez Gaitan's request for the same relief already awarded to six of his

co-petitioners.  This request is now fully briefed, see Doc. Nos. 12, 13, and as explained below,

the petition is ALLOWED as to Gonzalez Gaitan.

The Court first addresses a threshold issue raised by the respondents: whether joint

habeas petitions like the one filed to begin this action "are improper."  Doc. No. 8 at 6.  The

respondents urged that they are, "due to the individualized and fact intensive nature of petitions

for writs of habeas corpus."  Id.  They invited the Court to dismiss the joint petition and require

the filing of eight individual petitions.  Id. at 6–9; see Doc. No. 12 at 1 n.1.  Though the Court

directed Gonzalez Gaitan (through the same counsel who represented all eight petitioners) to respond, in his reply brief, "to the government's arguments regarding improper joinder of multiple petitioners in one habeas petition," Doc. No. 9, he did so only in the margin of his submission, Doc. No. 13 at 1 n.1. He suggested the issue is "moot" now because he is the "sole" remaining petitioner. Id.

On this point, Gonzalez Gaitan is wrong. Though a separate Order and a notice of voluntary dismissal have resolved the claims of the other seven petitioners, no judgment has entered yet in this action. Only when judgment issues will this matter be concluded—finally—as to any and all of the joint petitioners. For that reason, and because the Court ordered Gonzalez Gaitan to address this issue, the joinder question is not moot.

But as the Court observed in its order resolving the claims of six of his co-petitioners, serious liberty interests are at stake here. Doc. No. 10 at 1–2 n.1. And as the Court will explain below, it finds Gonzalez Gaitan's claim is resolved on its merits in the same way, and for some of the same reasons, as the claims of the co-petitioners who were the subject of the Court's prior Order. Given all this, the Court finds that consolidation of Gonzalez Gaitan's claims with those of his co-petitioners would have been permitted by Federal Rule of Civil Procedure 42(a). Thus, the Court will not dismiss Gonzalez Gaitan's claims due to improper joinder as the respondents suggest it should.[1]

---

[1] In choosing not to address joinder in his reply despite this Court's express direction, Gonzalez Gaitan has waived any other arguments in favor of joinder under Rule 20(a)(1) that might have been advanced here. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). The Court is aware that counsel representing the petitioners in this case have filed other joint habeas petitions in this District, including another one previously litigated before the undersigned in which the respondents made no objection to joinder. See Order, Diaz Dimas v. Hyde, No. 25-cv-12665-LTS (D. Mass. Oct. 6, 2025), ECF No. 14. In the future, counsel should consult Rules 20(a)(1) and 42(a) before filing joint petitions and consider which rule, if any, supports a request to resolve together the claims of multiple unrelated petitioners seeking individual relief.

The Court turns now to the merits.  Gonzalez Gaitan is a citizen of Nicaragua who entered the United States without inspection in December 2022.  Doc. No. 1 ¶¶ 11, 28; Doc. No. 12-1 ¶¶ 6–7.  He was stopped by border patrol but was released.  Doc. No. 1 ¶ 28; Doc. No. 12-1 ¶¶ 7–8.  More specifically, he was paroled into the United States for a period of two months.  Doc. No. 12-1 ¶ 8; Doc. No. 12-2 at 1; see 8 U.S.C. § 1182(d)(5)(A) (allowing for discretionary, temporary parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit").  Gonzalez Gaitan's parole expired in February 2023, but he remained in the country, and it appears immigration authorities took no steps to secure his removal for more than two years thereafter.  Doc. No. 12-1 ¶¶ 8–10 (describing expiration of parole then jumping ahead to July 2025 arrest on charges later dropped but which seemingly triggered immigration arrest).

Recently, agents with Immigration and Customs Enforcement ("ICE") arrested Gonzalez Gaitan in Connecticut and placed him in removal proceedings.  Doc. No. 1 ¶ 29.  He has no criminal record.  Doc. No. 1 ¶ 28.  He has been in immigration custody since early August 2025, Doc. No. 12-1 ¶ 5, detained now at Plymouth County Correctional Facility, Doc. No. 1 ¶¶ 1, 29.

On October 23, 2025, Gonzalez Gaitan and his co-petitioners instituted this action.  Doc. No. 1; see Doc. No. 9 (severing Gonzalez Gaitan's claims with his assent at respondents' request).  In its response to Gonzalez Gaitan's claims, the respondents attempt to distinguish this case from others in which the Court has recently construed the relevant immigration detention statutes.  See Doc. No. 7 at 2–3 (arguing Gonzalez Gaitan's claims warranted full briefing and "potentially a different result" than others in "which the legal questions at issue have been previously resolved by the Court"); see, e.g., Order, Garcia v. Hyde, No. 25-cv-11513-LTS (D. Mass. July 14, 2025), ECF No. 21; Order, Encarnacion v. Moniz, No. 25-cv-12237-LTS (D. Mass. Sept. 5, 2025), ECF No. 16.  Having reviewed the arguments advanced in their complete

response memorandum, Doc. No. 12, and the exhibits accompanying it, Doc. Nos. 12-1, 12-2, the Court concludes that Gonzalez Gaitan is entitled to the same relief previously awarded to his co-petitioners (and a growing list of similarly situated noncitizens who have been detained by immigration authorities in recent months after living in the United States for years).

Essentially, the respondents invite the Court to find that Gonzalez Gaitan's initial, limited, and long-expired parole into this country for humanitarian reasons means that he has always been, and remains now, subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court rejects this invitation for two reasons.

<u>First</u>, the mandatory detention statute the respondents invoke applies when "an applicant for admission" who is "seeking admission" is inspected by an "examining immigration officer" and found to be "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Even if a person in Gonzalez Gaitan's position is, upon the expiration or revocation of their discretionary parole, returned for legal purposes to the status of "applicant for admission" he held when he first arrived at the border, <u>see</u> Doc. No. 12 at 6–8,[2] that status does not suffice on its own to trigger mandatory detention under § 1225(b)(2)(A). The plain language of the statute includes other criteria, one of which is that the noncitizen is "seeking admission."

Gonzalez Gaitan, who has spent three years living in this country, can no longer reasonably be viewed as a person who is "seeking admission" in a present, active sense. This fact has been emphasized by other sessions of this Court in decisions rejecting the respondents' sweeping interpretation of § 1225(b)(2), and it applies equally here. <u>See, e.g.</u>, <u>Guerrero Orellana v. Moniz</u>, No. 25-cv-12664-PBS, 2025 WL 2809996, at *6–7 (D. Mass. Oct. 3, 2025) (noting

---

[2] Parole, as the respondents rightly note, "is not an 'admission' to the United States." Doc. No. 12 at 6 (quoting 8 U.S.C. §§ 1101(a)(13)(B) and 1182(d)(5)(A)).

"seeking admission" "implies some present action" and is not met where noncitizen "applicant for admission" arrived years ago and has lived here continuously ever since); Martinez v. Hyde, 792 F. Supp. 3d 211, 218–21 (D. Mass. 2025) (explaining that "seeking admission" "necessarily implies some sort of present-tense action," and otherwise would have "no separate meaning or effect at all").  Because Gonzalez Gaitan was not "seeking admission" this year when ICE agents arrested him, he does not satisfy at least one of the criteria for mandatory detention under § 1225(b)(2)(A).  In this way, Gonzalez Gaitan is no different than his co-petitioners who crossed the border years ago without inspection—and without ever encountering border patrol— then proceeded to build a life in this country until encountering ICE while driving to work or exiting a grocery store.  See Doc. No. 10 at 2.  Any decision to detain him, then, must be governed by § 1226(a).

Second, when immigration authorities acted to arrest and detain Gonzalez Gaitan this summer, they did not treat him as an applicant for admission who remained within the scope of § 1225(b)(2)(A).  Instead, they generated and served on him documents that facially rely on § 1226.  As the respondents concede, ICE served Gonzalez Gaitan "with a Form I-200, Warrant for Arrest of Alien" as well as a "Notice to Appear" for traditional removal proceedings at the time of his arrest in August.  Doc. No. 12-1 ¶ 10.  Though respondents' memorandum characterizes the warrant as "a belt-and-suspenders" measure taken after Gonzalez Gaitan's arrest, which the respondents suggest has no bearing on the detention analysis here, that characterization is not supported by the declaration accompanying the memorandum.

The declarant describes the arrest and service of the warrant as one event.  Doc. No. 12-1 ¶ 10.  She does not state that the warrant was prepared, issued, or served later or separately, nor does she describe any facts or documents reflecting that the decision to arrest Gonzalez Gaitan

5

was made pursuant to § 1225(b)(2).  This record suggests that the immigration officers who encountered Gonzalez Gaitan in August did not rely on the mandatory detention statute and treat him as a person remaining (via a legal fiction) at the border; rather, they treated him like a noncitizen found inside the country whose arrest and detention were subject to § 1226(a).  Cf. DeAndrade v. Moniz, No. 25-cv-12455-FDS, 2025 WL 2841844, at *6 (D. Mass. Oct. 7, 2025) (finding that where decisions by immigration authorities show they invoked mechanisms available under § 1226 rather than § 1225, they may not "turn back the clock" even where notice of expedited removal had issued before officials resorted to § 1226).  That approach was consistent both with the relevant agencies' historical practice in such situations and with the plain language of the governing detention statutes.

For the foregoing reasons, the Court finds that Gonzalez Gaitan is not subject to mandatory detention under § 1225(b).  As to him, then, the petition is hereby ALLOWED, and the Court ORDERS as follows: 1) the respondents shall release Gonzalez Gaitan unless he is provided a bond hearing under 8 U.S.C. § 1226(a) within seven days of this Order;[3] and 2) the respondents shall not retaliate against Gonzalez Gaitan in the context of the bond hearing or otherwise for filing this habeas petition.

SO ORDERED.

  /s/ Leo T. Sorokin
United States District Judge

---

[3] At the hearing, the government will have the burden of either proving by clear and convincing evidence that the petitioner poses a danger to the community, or proving by a preponderance of the evidence that he is a flight risk.  Hernandez-Lara v. Lyons, 10 F.4th 19, 42 (1st Cir. 2021).